FILED IN CHAMBERS
U.S.D.C. - Atlanta

MAR 2 8 2018

James N. Hatten, Clerk
_JMCau_ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KEITH WILLIAM DODGSON, JR.,

     Plaintiff

v.

FIRST ADVANTAGE BACKGROUND
SERVICES CORP.,

     Defendant

CIVIL ACTION NO.
1:16-CV-1894-ODE-JSA

## ORDER

This Fair Credit Reporting Act ("FCRA") case alleging a violation of 15 U.S.C. §§ 1681 et seq., is presently before the Court on United States Magistrate Judge Justin S. Anand's Final Report and Recommendation ("R&R") [Doc. 51] in which he recommends that Defendant's Motion for Summary Judgment [Doc. 37] be DENIED. Defendant First Advantage Background Services Corp. ("Defendant") filed timely objections to the R&R [Doc. 55] to which Plaintiff Replied [Doc. 56]. For the reasons stated below, Defendant's Motion for Summary Judgment [Doc. 37] is DENIED and the R&R is ADOPTED IN FULL.

## I.   FACTS

To the extent that Defendant failed to object to the R&R's findings of fact, the following facts are taken from the R&R [Doc. 51] and are undisputed unless otherwise indicated.

Defendant provides background screening services to a variety of customers and is a consumer reporting agency. Defendant has an agreement with Little League, a sports organization that operates youth baseball and softball leagues, to provide background reports on volunteers. Defendant uses a "name only" sex offender search ("NOSO"

search) product for Little League and developed this product specifically for Little League. Defendant only uses this particular search for potential Little League volunteers, but Defendant also completes other types of searches for various clients to verify applicants for employment purposes.

Plaintiff Keith William Dodgson, Jr. ("Plaintiff") wanted to become an assistant coach for his son's team operated by Little League, but to become an unpaid volunteer Plaintiff was required to submit to a background check using Defendant company. The actual background check application Plaintiff filled out is not in evidence, but Plaintiff at the very least provided his first and last name, date of birth, and street address. Defendant does not dispute that these various personal identifiers were available to it from Plaintiff's application when it prepared the background report on Plaintiff. Defendant conducted the NOSO search and returned a sex offender registry belonging to Keith William Dodgson. Plaintiff does not dispute there is someone by that name on the sex offender registry, but contends that he is not that person. The record returned and sent to Plaintiff and Little League contained at the very least an address that did not match Plaintiff's address, though Defendant also had Plaintiff's and the supposed match's birthday available to compare [O'Connor Dep., Doc. 44-7 at 11]. Defendant did not consider this information when it matched Plaintiff's name with the name on the sex offender registry.

Defendant obtained the sex offender registry information from the national consumer reporting company, Experian Public Records, Inc. ("Experian"). The NOSO search results were made available to Little League, and Defendant also generated a letter to Plaintiff

2

with the results. That letter stated: "According to the records, you share the same name with a known criminal or registered sex offender" [Doc. 44-12]. The letter continued, "Little League is aware this record may not be yours, and they are committed to investigating the situation before approving or denying your application" [Id.]. Defendant explained in the letter that the state in which the search was conducted does not provide personal identifiers beyond first and last name, and that Defendant is aware this creates a burden but that it is better to use a "thorough review process" after the fact than allow convicted ex-offenders to participate with Little League [Id.]. The report sent to Little League by Defendant specifically stated: "This Record is matched by First Name, Last Name ONLY and may not belong to your subject. Your further review . . . is required" [Doc. 37-4 at 19]. Defendant used this NOSO search conducted through a private database even though it could have searched through actual public records, which contain identifying information in addition to first and last name. Both the report sent to Little League and the letter sent to Plaintiff indicated that these written communications were sent to comply with, and as proof of compliance with, the FCRA.

The letter sent to Plaintiff thus informed Plaintiff that Defendant was reporting the information it found to Little League because there was public record information that matched his personal identifiers, but did not indicate the record was definitively that of Plaintiff. The letter was dated April 9, 2016, and on April 18, 2016, Plaintiff called Defendant to say the report he received was inaccurate because he was not a registered sex offender. It is undisputed that Defendant's employee whom Plaintiff spoke with stated that if Plaintiff believed the report concerned an individual that

was not him it would go ahead and raise a request to change the report and send the updated report to Little League and to Plaintiff. The employee asked Plaintiff if he wanted to proceed with that action and Plaintiff responded "no." Plaintiff also said his next phone call "is going to be to a very expensive law firm" [Doc. 44-14 at 5].

A Little League representative reviewed the report. The representative never spoke to Plaintiff about the report because she determined there was no issue and that the sex offender record found was not a correct record for Plaintiff. Little League approved Plaintiff to be a coach.

## II.   DEFENDANT'S OBJECTIONS

In reviewing an R&R, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Absent objection, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

Defendant's objections to the R&R fall into two broad categories: 1) the R&R improperly found the background report completed on Plaintiff to be a "consumer report" because to be a consumer report, a report must be used for an enumerated purpose; and 2) even if the report was a consumer report, Defendant's actions were not willful because its interpretation of the relevant statutory provisions was objectively reasonable and Defendant did not disregard any obviously high risk of harm due to its practice of offering corrections.

Defendant moved for summary judgment on Plaintiff's claim that Defendant violated 15 U.S.C. § 1681e(b), which says: "Whenever a

4

consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Plaintiff dismissed a number of claims prior to the R&R, and thus as stated in the R&R, the only issues to be determined are: 1) whether the report prepared by Defendant was a "consumer report" under the FCRA, and 2) whether Defendant acted "willfully" when it prepared the report. 15 U.S.C. § 1681n-1681p (providing civil liability for any person who "willfully" fails to comply with the requirements of the FCRA, which includes § 1681e(b)).

The Court will address each objection in turn, but first will review the summary judgment standard. The Court will grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citation omitted). Once the movant has met this initial burden, the opposing party must present evidence establishing a material issue of fact. Id. at 325. The non-moving party must go "beyond the pleadings" and present evidence designating "specific facts showing that there is a genuine issue for trial." Id. at 324 (internal quotation marks and citation omitted).

5

### A. Whether the Report was a Consumer Report

Defendant argues the R&R erred in finding that the report completed on Plaintiff was a consumer report because:

- The report was completed for volunteer purposes and the Eighth Circuit held reports prepared for volunteer purposes are not consumer reports and it "appears no court has ever disagreed";

- The R&R substituted "information" for "communication" in § 1681a(d), the portion of the FCRA statute that defines "consumer report"; and

- The R&R erred in concluding that permission granted to a user is the same as written instructions to a consumer reporting agency.

A consumer report is:

any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for--

(A) credit or insurance to be used primarily for personal, family, or household purposes;

(B) employment purposes; or

(C) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a. And according to § 1681b, other authorized purposes include furnishing a consumer report:

(1) In response to the order of a court having jurisdiction to issue such an order, or a subpoena issued in connection with proceedings before a Federal grand jury.
(2) In accordance with the written instructions of the consumer to whom it relates.

6

Authorized purposes also include furnishing a consumer report "to a person which it has reason to believe intends to use the information for employment purposes." Id. Here, there is no dispute that Plaintiff applied for a volunteer position and that the statute does not mention the word "volunteer," but instead only refers to "employment." Nonetheless the R&R concluded that the report here prepared to determine Plaintiff's eligibility for volunteer purposes was a consumer report. The Court agrees.

As the R&R explained, there is no dispute that Defendant is a consumer reporting agency and that the report prepared by Defendant was a "written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's . . . general reputation, personal characteristics, or mode of living." § 1681a(d). Defendant focuses its argument on the "purpose" clause, arguing that the information was neither "used" nor "expected to be used" nor "collected" for any qualifying purpose under the statute because Plaintiff applied for a volunteer position and the report was issued to establish his eligibility for that position.

But the statute says a consumer report is a report including information about a consumer "which is used or expected to be used *or collected in whole or in part*" for the purpose of establishing a consumer's eligibility for certain enumerated purposes, such as employment. The R&R explained that Defendant procured the information it included in the report from Experian, and collected that information for purposes including for use in employment, which is an enumerated purpose in the FCRA statute. The United States Court of Appeals for the Eleventh Circuit confronted this exact issue

7

in Yang v. Gov't Employees Ins. Co., 146 F.3d 1320, 1322 (11th Cir. 1998).

In Yang, the plaintiffs sued their insurance company under the FCRA when the insurance company obtained and used a report on the plaintiffs it obtained from a consumer reporting agency. Yang, 146 F.3d at 1321. It was undisputed that the insurance company obtained the report to evaluate an insurance claim, which like obtaining a report to evaluate a potential volunteer's fitness to work with children, is not an enumerated purpose under the FCRA. Nonetheless the United States Court of Appeals for the Eleventh Circuit held the report was a consumer report because the information was originally collected by a consumer reporting agency for the purpose of evaluating a consumer's credit worthiness, which is an enumerated purpose, and thus it did not matter how the insurance company actually used the information. A "communication of information," the court explained, is a consumer report if "*any one of the three components* in the Purpose clause is met." Id. at 1325 (emphasis in original). In other words, the question is if the information is used, expected to be used, *or* collected in whole or in part to establish the consumer's eligibility for an enumerated purpose. The Yang court specifically said, "[Plaintiffs] contend that Equifax 'collected' the *information* contained in [the report] for . . . specifically-enumerated reasons." Id. at 1324 (emphasis added). The court went on, "[Plaintiffs] contend [the reports] are consumer reports if such a finding is consistent with any one of the clause's components--ultimate use, expectation of use or reason for compilation. We agree." Id.

8

Here, Defendant provides background screening services to a variety of customers and that includes customers like Little League, which use the information to evaluate volunteers, and customers who use the reports for employment screening purposes. Defendant admitted that the criminal information it keeps in its file is collected at least in part for background reports requested for employment purposes in addition to volunteer purposes. Thus at the very least there is a question of material fact as to whether the information was "collected" at least in part for an enumerated purpose under the FCRA, making the report a consumer report.

Defendant argues in its Objections [Doc. 55] that the R&R conflates the terms "communication" and "information." Defendant thus argues the "communication" must be prepared for or used to make a determination about the consumer for an enumerated purpose, not the information. But the statute says "communication of any *information* by a consumer reporting agency," which is used, expected to be used, or collected to determine a consumer's eligibility for an enumerated purpose. Defendant attempts to twist the meaning of the statute by omitting the language that qualifies the word communication. The statute concerns the communication of *information* that is used for a specific purpose. Indeed, the Yang court clarified in a footnote that in reaching its conclusion, it agreed "with our predecessor circuit's rationale," to find that "the purpose for which the information was collected governs whether [a] report is a consumer report under the FCRA[,] despite that the [defendant] ultimately used the *information*," for a non-enumerated purpose. Yang, 146 F.3d at 1325 n.5 (internal quotation marks and citation omitted) (emphasis added).

9

Defendant also argues that the Eighth Circuit in <u>Dotzler v. Perot</u>, 124 F.3d 207 (8th Cir. 1997) (affirming the lower court's decision in full) spoke on the issue of whether reports prepared for volunteer purposes are consumer reports and found that they are not. Beyond that <u>Dotzler</u> is not binding on this Court, the lower court (the United States District Court for the Eastern District of Missouri) based its holding in <u>Dotzler</u> on the fact that the report did not bear on the plaintiffs' credit or general character. Moreover, even if that case had turned on whether the information was used for an enumerated purpose, it did not reach the question, or have facts that bore on the question, of whether the information was collected at least in part for an enumerated purpose.  Thus, the <u>Dotzler</u> case is distinguishable from the case at hand, and Eleventh Circuit precedent holds that a report is a consumer report where the information in the report was collected or expected to be used at least in part for an enumerated purpose.

After discussing that the report sent to Little League was a consumer report (or finding that at the very least Plaintiff presented evidence sufficient to create a genuine issue of material fact as to whether the report was a consumer report, making summary judgment inappropriate) because there is evidence the information contained in the report was collected at least in part for an enumerated purpose, the R&R offered an additional reason the report was a consumer report.  The R&R explained that § 1681a(d) states a consumer report is a report in which the information is used, expected to be used, or collected in whole or in part for "any other purpose authorized under section 1681b," and § 1681b says a consumer reporting agency may furnish a consumer report "in accordance with

10

the written instructions of the consumer to whom it relates." The R&R therefore reasoned that when Plaintiff submitted his signed authorization to Little League for the completion of a background check, he submitted written instructions to which Defendant returned a document that must therefore be considered a consumer report.

The R&R offered no case law to support this proposition. However, the Court need not decide whether Defendant's report was a consumer report because Plaintiff submitted "written instructions" to Little League. The Court has already offered an alternative reason that the report was a consumer report. Again, at the very least there is a question of material fact as to whether the report was a consumer report and that is all that is needed to overcome Defendant's summary judgment motion.

**B.   Whether Defendant's Actions Were Willful**

Defendant argues the R&R erred in finding that Defendant willfully violated § 1681e(b) because:

- Defendant's interpretation of § 1681a(d) is objectively reasonable and there is no evidence to support a finding that Defendant misinterpreted the statute with reckless disregard of its FCRA obligations; and

- Defendant could not have disregarded a high risk of harm that was so obvious Defendant should have known about it because Defendant has a practice of transparency and verification, including encouraging its clients (such as Little League) to investigate the records it provides to them.

Section 1681e(b) says that when a consumer reporting agency, such as Defendant, prepares a consumer report it must follow

11

"reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." A willful violation of § 1681e(b) requires a showing that Defendant acted with reckless disregard of the law and its obligations. <u>Safeco Ins. Co. of Am. v. Burr</u>, 551 U.S. 47, 57-58 (2007). In <u>Safeco</u>, the Court explained that a company subject to the FCRA:

> does not act in reckless disregard of [the FCRA] unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

<u>Id.</u> at 69. Here, Defendant objects to the R&R because it argues <u>Safeco</u> provides it a safe harbor. Specifically, Defendant argues that its interpretation of the FCRA (finding that it did *not* apply to the background check it completed on Plaintiff because Plaintiff was applying for a volunteer position) was not objectively unreasonable. Thus, Defendant argues that it cannot be said it acted with reckless disregard of the statute and ran a substantially greater risk of violation than if it were merely careless in its interpretation. The Court finds this argument disingenuous.

Defendant acknowledged multiple times throughout the reporting process it was taking steps to comply with the FCRA [Docs. 44-13; 44-8]. For example, in the letter Defendant sent to Plaintiff, Defendant included FCRA-mandated disclosures and an FCRA "summary of rights," explaining Plaintiff's "major rights" under the FCRA. The summary of rights section of the letter specifically said "The federal Fair Credit Reporting Act (FCRA) promotes the accuracy, fairness, and privacy of information in the files of consumer reporting agencies," and provided a federal government domain website

and the street address of the Consumer Financial Protection Bureau if Plaintiff wanted "more information, including information about additional rights" [Doc. 44-13]. The Court sees no reason Defendant would take these steps if it honestly believed the FCRA did not apply to the background report it prepared on Plaintiff. The "safe harbor," as Plaintiff calls it, provided by Safeco cannot shield a defendant from compliance with the FCRA when that defendant clearly interpreted the FCRA to apply, then, when convenient, pretends as if it always believed the FCRA did not apply.

Essentially, Defendant is asking the Court to believe Defendant relied on an objectively reasonable interpretation of the FCRA in finding it did not apply to Plaintiff's background check when there is evidence Defendant itself believed the FCRA applied throughout the process of preparing Plaintiff's report. Defendant's own actions in making FCRA disclosures and informing Plaintiff of his rights under the FCRA are incompatible with its self-serving assertion that it believed the FCRA did not apply when preparing the report on Plaintiff. And as explained in the R&R, at the very least there is a question of material fact as to whether Defendant's interpretation that the FCRA did not apply was reasonable in light of Yang and the clear statutory text explaining that a consumer report is one in which there is a communication of information collected at least in part for an enumerated purpose.

Defendant next argues it could not be said Defendant acted in reckless disregard of its obligations under the statute because it offered to correct the error and disclosed to Plaintiff and Little League that the record may be incorrect and should be investigated further. This argument fails for a number of reasons. First, though

13

Defendant says it is surprised the R&R did not mention its offer to fix the flawed report, Defendant made no such argument in its motion for summary judgment.   Defendant made no mention at all in its summary judgment motion that the Court should consider its actions after it issued the report in deciding whether it acted willfully. Thus, the Court need not consider any argument to that effect now. And even if the Court were to consider this argument, the issue is not whether Defendant offered to fix its error, but whether Defendant's search procedures worked to assure maximum possible accuracy as required by § 1681e(b).  Defendant cannot simply pass its obligations under the FCRA onto Little League or Plaintiff.  By the plain meaning of the FCRA text Defendant has an obligation to assure maximum possible accuracy.

The question then is whether by using a name-only search and not comparing results to other identifiers Defendant had available, Defendant acted in reckless disregard for its obligations under the FCRA.  Defendant cannot show its use of the name-only search and lack of verification were not willful as a matter of law.

At the very least there are questions of material fact as to whether Defendant took the reasonable steps necessary to assure maximum possible accuracy as required under the FCRA.   It is undisputed that Plaintiff is not the only person to accuse Defendant of inaccurate reporting.  In the five years leading to May 2, 2017 there were 3,726 instances where someone disputed the sex offender finding made by Defendant, according to Defendant's Rule 30(b)(6) witness and Vice President of Operations Matthew O'Connor ("O'Connor") [O'Connor Dep., Doc. 47-4 at 5].   Of those 3,726 instances, in the overwhelming majority of cases, 3,594 to be exact,

Case 1:16-cv-01894-ODE   Document 57   Filed 03/28/18   Page 15 of 19


Defendant determined the sex offender notation should be removed from the disputing consumer's file [Id.]. Defendant argues this fact is immaterial because O'Connor did not say in his deposition the exact reason for the 3,594 removals of a sex offender notation, but it is undisputed that in the last five years such a notation had to be removed 3,594 times following "the ultimate resolution of a reinvestigation" [Id.]. Defendant therefore cannot claim as a matter of law that its NOSO search system assured maximum possible accuracy or even that Defendant took reasonable steps to assure maximum accuracy.

That Defendant may have taken steps after the fact to fix inaccurate results is not the same as assuring accurate results in the first place before the dissemination of consumer reports. The very point of the FCRA is to ensure reporting agencies "exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy," because consumer reporting agencies have "assumed a vital role in assembling and evaluating consumer credit and other information on consumers." § 1681. If consumer reporting agencies could simply disseminate inaccurate information and then apologize to escape their obligations the purpose of the FCRA would be rendered moot. At that point, once a person is already labeled a criminal, it is too late for fairness and confidentiality.

Defendant cites to Smith v. LexisNexis Screening Solutions, Inc., 837 F.3d 604 (6th Cir. 2016) to support the proposition that its efforts to correct any mistakes foreclose a finding that it acted in reckless disregard of its obligations under the FCRA. However, Smith does not go so far and in fact damages Defendant's argument.

In Smith, a job applicant brought action against a consumer reporting agency under the FCRA because the applicant alleged that the criminal background check, which incorrectly returned a fraud conviction for another individual, resulted in a delay in him being hired. Smith, 837 F.3d at 607-08. To complete the background check for its client, the defendant consumer reporting agency required it be provided with the applicant's first name, last name, and date of birth. Id. at 607. The defendant was not provided with the applicant's middle name but did have his Social Security number. Id. The defendant's standard procedure was to only include a criminal record on a report if the record matched a first name, last name, and birth date. Id. The defendant reported that the applicant had a criminal conviction because the defendant found a first and last name and birth date match--though the applicant's middle name, which defendant did not possess when completing the check--did not match the person whose record the defendant uncovered. Id. at 607-08. The criminal records did not contain a Social Security number that the defendant could have used to verify the record it found. Id. at 608. And the defendant's own data showed that 99.8% of records were not disputed, meaning it had a dispute rate of only .2%. Id. at 607. The court held that although a jury could find the defendant was negligent in compiling the applicant's report, that was a "far cry from being willful." Id. at 610. There was not evidence, the court explained, that other individuals had lodged similar complaints, and the defendant had a reliable track record and corrected its mistake shortly after the plaintiff challenged it. Id. at 611.

Thus, while the fact that the defendant corrected its mistake quickly was part of the court's analysis, the majority of the court's

analysis rested on other facts indicating the defendant had a strong track record of reliability and had not received similar complaints in the past. Here, the opposite is true. More than 3,700 complaints were lodged at Defendant in the five years preceding this claim, and in the vast majority of those instances the report was found to be incorrect because the sex offender notation was removed upon reinvestigation. Unlike the defendant in Smith, Defendant here has no history of reliability to offer and cannot prove as a matter of law it acted to assure "maximum possible accuracy," but simply made a one-off mistake.

Moreover, Defendant's misleading statements made to Plaintiff also indicate that Defendant acted willfully to violate the FCRA. Defendant's search completed on Plaintiff used bulk criminal data obtained from Experian. Defendant admittedly did not review the actual government sex offender records that it matched to Plaintiff [O'Connor Dep., Doc. 44-7 at 13]. But in its letter sent to Plaintiff, Defendant said "Little League and [Defendant] understand that the government's reporting of criminal records by name alone creates a burden on everyone involved" [Doc. 44-12 at 2]. That, however, is not true. Defendant did not search any government files, but it could have. Defendant's 30(b)(6) expert testified that Pennsylvania court records *do* include a date of birth for sex offenders, so it was not true that the relevant government entities provided no identifying information other than first and last name, and thus Defendant had no information other than Plaintiff's name to use in searching the sex offender registry [see O'Connor Dep., Doc. 44-7 at 13]. And if Defendant searched the actual files maintained by the state of Pennsylvania it could have used Plaintiff's birth

17

date to determine that the sex offender match it found was for Plaintiff's biological father and not Plaintiff. Defendant instead took a presumably cost-effective short cut and purchased "raw data" from Experian, which provided only limited identifying information for criminal records [see id. at 11].

But by Defendant's own admission, even the records Experian provided to Defendant included a birth year [Id.]. Defendant made no attempt to verify if that birth date was the correct birth date for Plaintiff, even though Defendant admitted Plaintiff provided Defendant with his birth date [Id.; see also Doc. 44-7 at 22]. Indeed, Plaintiff's birth date (redacted for the record) is listed on the report Defendant prepared and sent to Plaintiff and Little League [Doc. 44-8 at 3]. It therefore cannot be said as a matter of law that Plaintiff took reasonable steps to assure maximum accuracy and did not act with reckless disregard of its obligations under the FCRA. Defendant had additional information available to verify the criminal record it matched to Plaintiff. Defendant even had this information on hand from the Experian data it purchased and would not have had to conduct additional searches into the actual government records (which contain even more identifying information contrary to what Defendant said in the letter sent to Plaintiff) to realize the record it matched to Plaintiff was incorrect. Instead, Defendant sent the results of its search to Plaintiff and Little League and only offered to correct its error after the fact, passing the responsibility for verification onto Little League and Plaintiff. Defendant seems to argue in its Objections [Doc. 55] that Defendant completed the name-only search pursuant to its contract with Little League, which presumably did not request a different type of search.

18

That may be true, but Defendant's contract with a third party does not affect its obligation to take reasonable steps to assure maximum possible accuracy of consumer reports.

Because there are questions of fact as to whether the report issued on Plaintiff was a consumer report and to whether Defendant acted willfully, the Court cannot grant summary judgment for Defendant.

## III. CONCLUSION

For the reasons stated above Defendant's Motion for Summary Judgment [Doc. 37] is DENIED and the Court ADOPTS IN FULL the R&R [Doc. 51].

SO ORDERED, this _27_ day of March, 2018.

ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE

19